UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SEAN TOHIDI,
    Plaintiff,

v.

CITY OF READING POLICE DEPARTMENT,
    Defendant.

No. 5:24-cv-0591

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 11 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                                                             June 13, 2024
**United States District Judge**

### I. INTRODUCTION

Plaintiff Sean Tohidi brings this employment discrimination action against his former employer, the City of Reading Police Department. While a police trainee, Tohidi, who has Tourette's syndrome, was allegedly discriminated against and harassed because of his disability, as well as his sexual orientation. The City has filed a partial Motion to Dismiss based on Tohidi's purported failure to exhaust certain claims at the administrative level and failure to state certain claims. For the reasons set forth below, the Motion is denied on exhaustion grounds, but granted in part with respect to Tohidi's disability retaliation claims and they are dismissed.

### II. BACKGROUND

Tohidi has Tourette's syndrome, which is a condition that impacts the nervous system and manifests in involuntary movements and/or sounds. *See* Am. Compl. ¶¶ 10, 17, ECF No. 9. Due to his Tourette's, the City's agents perceived Tohidi as disabled even though he was capable of performing his job duties. *Id.* Tahiti contends that his Tourette's syndrome

substantially limits one or more of his major life activities, including, sleeping, concentrating, caring for himself, and working.  *See id.* ¶ 29.

In January 2022, Tohidi was hired by the City as a police trainee.  *See id.* ¶ 8.  Tohidi asserts that he was capable of performing his job duties as a police officer despite his disability, but the City's agents perceived him as disabled.  *See id.* ¶¶ 10, 29.  From the beginning of his employment, they called Tohidi retarded and threatened him with termination for mistakes his peers also made without threats of termination.  *See id.* ¶¶ 9, 11.  Tohidi complained to his supervisor, who did not redress his complaints and, instead, he was thereafter called "retarded" more regularly by his colleagues.  *See id.* ¶¶ 12, 19.  Throughout his employment, Tohidi was

> . . . subjected to unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. . . .
>
> Such conduct included, but was not limited to:
> Unwelcome sexual comments, jokes, or gestures directed at or about Plaintiff;
> Unwanted physical contact and advances;
> Displaying sexually suggestive objects or pictures in the workplace;
> Sending sexually explicit messages or emails to Plaintiff

*See id.* ¶¶ 115-116 (Count X).  Tohidi's training officer, Sana, also frequently called Tohidi "retarded," homosexual, and gay, and joked about Tohidi liking men.  *See id.* ¶ 13.  On one occasion, Sana told Tohidi's colleagues that Tohidi was "retarded and liked dick," which made Tohidi extremely uncomfortable and purportedly created a hostile work environment.  *See id.* ¶ 14.  This hostile behavior included, but was not limited to:

> Repeated derogatory remarks and jokes about Plaintiff's disability in the presence of colleagues and superiors;
>
> Systematic exclusion from work-related activities and meetings essential to Plaintiff's role, directly related to assumptions about Plaintiff's disability;
>
> Unwarranted and excessive scrutiny of Plaintiff's work performance and productivity, not similarly imposed upon non-disabled employees;

> Failure or refusal to accommodate reasonable requests that were essential for Plaintiff to perform his/her job duties effectively, exacerbating the hostile environment.
>
> Such conduct was not isolated but rather part of a continuous pattern, creating an intimidating, hostile, and offensive working environment for Plaintiff.

*See id.* ¶ 123 (Count XI).  As a result of the daily berating, Tohidi was purportedly constructively discharged in December 2022.  *See id.* ¶ 14.

In a charge of discrimination before the Pennsylvania Human Relations Commission ("PHRC") dated March 29, 2023, Tohidi asserted discrimination based on "Retaliation," "Disability," and "Hostile Work Environment" in violation of the Americans With Disabilities Act ("ADA").  *See* PHRC charge, Ex. A, ECF No. 11-4.  Tohidi alleged that he has Tourette's syndrome and "was held differently from his other coworkers when it comes to making mistakes" and "was punished differently from the others." *Id.*  Tohidi alleged that he "was always threatened that he would be terminated [while his] colleagues were not." *Id.*  Tohidi alleged that he "resigned voluntarily because it was hard for him to work [at the City of Reading Police Department] due to the unfair treatment he was getting from his officers. . . ." *Id.*

Tohidi filed an amended charge of discrimination with the PHRC on October 27, 2023. *See* Am. PHRC Charge, Ex. A, ECF No. 12-1.  In the amended charge, Tohidi claimed discrimination based on "Retaliation," "Disability," and "Sex" in violation of the Americans With Disabilities Act ("ADA"). *Id.*  Tohidi included the allegations from the original charge and also alleged: "[a]long with being called retarded all the time, . . . Sana always called him a homo sexual." *Id.*  Sana told Tohidi: "'you know you're gay or like make jokes about like him dating a guy and stuff." *Id.*  Additionally, a coworker called Tohidi "retard all the time" and also said: "yeah, Mr. Tohidi ':you [sic] know he'd like dick.'" *Id.*

3
061224

In February 2024, Tohidi initiated the above-captioned action by filing a twelve-count complaint against the City. *See* ECF No. 1. The City filed a Motion to Dismiss for failure to exhaust administrative remedies and failure to state a claim. *See* ECF No. 8. Tohidi responded by filing an Amended Complaint. *See* Am. Compl. The Amended Complaint is nearly identical to the original pleading, except for the addition of paragraphs fifteen (15) to twenty-two (22). The Amended Complaint sets forth the following counts:

> Count I- ADA discrimination
> Count II- ADA retaliation
> Count III- Title VII sexual harassment and discrimination
> Count IV (first)[1]- Title VII hostile work environment sexual harassment
> Count IV (second)- Title VII sexual harassment retaliation
> Count V- PHRA[2] disability discrimination
> Count VI- PHRA sexual orientation discrimination
> Count VII- PHRA disability discrimination retaliation
> Count VIII- PHRA disability discrimination hostile work environment
> Count IX- PHRA sexual harassment retaliation
> Count X- PHRA sexual harassment hostile work environment
> Count XI- ADA hostile work environment

The City filed a Motion to Dismiss the Amended Complaint for the same reasons set out in its motion to dismiss the original complaint. *See* Mot., ECF No. 11; Mem., ECF No. 11-2. The City argues: (1) the sexual harassment claims should be dismissed for failure to exhaust administrative remedies; (2) the hostile work environment claims should be dismissed for failure to exhaust administrative remedies; (3) the disability discrimination claims should be dismissed for failure to state a claim; and (4) the retaliation claims should be dismissed for failure to state a claim. *See* Mem. 7-16. The City attaches several exhibits to its Motion, including the PHRC complaint Tohidi filed with the PHRC signed March 29, 2023.[3] *See* PHRC charge, Ex. A, ECF

---

[1]   The Amended Complaint, as did the original complaint, includes two counts labeled as Count IV. They are distinguished for purposes of this Opinion as the first and second Count IV.
[2]   Pennsylvania Human Relations Act ("PHRA")
[3]   The remaining exhibits are not incorporated into the complaint by reference, nor are they matters of which a court may take judicial notice; therefore, they are not considered by the Court

No. 11-4. *See also* ECF No. 13-1. This form is also attached to Tohidi's opposition to the Motion, as is the amended PHRC complaint signed on October 27, 2023. *See* Am. PHRC Charge, Ex. A, ECF No. 12-1.

## III.     LEGAL STANDARDS

### A.     Motion to Dismiss, Rule 12(b)(6) - Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a

---

in deciding the Motion to Dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**      **Exhaustion – Review of Applicable Law**

Title I of the ADA, Title VII of the Civil Rights Act of 1964, and the PHRA "establish administrative remedies and procedures that claimants must exhaust prior to bringing a civil action in court."  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) (citing 42 U.S.C. § 2000e-5; 43 Pa. C.S. § 962(c)); *Cook v. City of Phila.*, 94 F. Supp. 3d 640, 647 (E.D. Pa. 2015) ("Title I [of the ADA] incorporates the administrative procedures of Title VII of the Civil Rights Act of 1964.").  "Once a charge of some sort is filed with the EEOC, [the Third Circuit Court of Appeals] has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . .'"  *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966-67 (3d Cir. 1978) (considering whether "there is a close nexus between the facts supporting the [EEOC and new] claims") (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).  A "district court may assume jurisdiction over additional charges if they are reasonably within the scope of the claimant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims," regardless of whether the

actual EEOC investigation uncovered any evidence of the new claim. *See Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).

### C. Disability Discrimination – Review of Applicable Law

"[E]mployers are prohibited from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999) (quoting 42 U.S.C. § 12112(a)). "A 'disability' is defined as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Id.* at 305-06 (quoting 42 U.S.C. § 12102(2)). "[M]ajor life activities include, but are not limited to, caring for oneself, . . . sleeping, . . . concentrating. . . ." 42 U.S.C. § 12102(2)(A).

To state a prima facie case of discrimination under the ADA and/or the PHRA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998); *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010) (holding that "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA"). However, at the motion to dismiss stage, "a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted).

### D.     Retaliation – Review of Applicable Law

To establish a prima facie case of retaliation under Title VII, the ADA, and/or the PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . . . The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *Moore,* 461 F.3d at 341-42. In determining causation, courts

often look to the "temporal proximity between the protected activity and the alleged discrimination" and "the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)) (internal quotation marks omitted), *overruled on other grounds by Burlington Northern*, 548 U.S. 53. Since there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *See Jensen*, 435 F3d at 450 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a prima facie case, the post-Twombly pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).

## IV.   ANALYSIS

### A.   All claims are exhausted.

The City argues that Tohidi's claims for sexual harassment and retaliation, discrimination based on sexual orientation, and hostile work environment, should be dismissed for failure to exhaust administrative remedies. *See* Mem. 8-16. The City asserts that the PHRC charge did not allege any facts or claims for discrimination or retaliation based on sex or sexual orientation. *See id.* at 8-11. As to the hostile work environment claim, the City acknowledges that on the PHRC charge the "Other" box was checked and the words "Hostile Work Environment" were typed

below, but suggests the particulars of the charge were dedicated to alleging disability discrimination.  *See id.* 12-16.

### i. Sexual harassment, sexual orientation, and retaliation claims

Although the PHRC Charge dated March 29, 2023, did not allege facts pertaining to discrimination or retaliation based on sex, the Amended PHRC Charge dated October 27, 2023, did.  Specifically, in that charge the boxes were checked for "Retaliation" and "Sex."  *See* Am. PHRC Charge.  In the particulars for the charge, Tohidi alleged that "Sana always called him a homo sexual" and told him "'you know you're gay or like make jokes about like him dating a guy and stuff."  *Id.*  The Amended PHRC Charge further alleged that a coworker said "yeah, Mr. Tohidi ':you [sic] know he'd like dick.'"  *Id.*  These allegations, coupled with Tohidi's allegations that the comments made him "very uncomfortable" and that he resigned due to the unfair treatment, *see id.*, are sufficient from which to find that his Title VII and PHRA claims for sexual harassment are reasonably within the scope of the Amended PHRC Charge.  *See Angelis v. Phila. Hous. Auth.*, No. 23-460, 2024 U.S. Dist. LEXIS 26342, at *11-14 (E.D. Pa. Feb. 15, 2024) (concluding that the plaintiff's sex discrimination claim relies on the theory that the defendant discriminated against the plaintiff for not conforming to gender stereotypes of men, which also support the plaintiff's claim that he was discriminated against because of his sexual orientation).  Additionally, the facts in the PHRC Amended Charge are closely related to the facts underlying the claims in this case.  For example, Count X (PHRC sexual harassment hostile work environment) alleges that the unwelcome sexual conduct "included, but was not limited to: [u]nwelcome sexual comments, jokes, or gestures directed at or about Plaintiff."  *See* Am. Compl. ¶ 116.  The facts underlying the PHRC Amended Charge, which also asserted that "Tohidi had a meeting with his supervisor about his situation" and he "was scared to speak up as he might be framed," are also closely connected to Tohidi's retaliation claims under Title VII

and PHRA. *See Flora v. Wyndcroft Sch.*, No. 12-6455, 2013 U.S. Dist. LEXIS 25292, at *14 (E.D. Pa. Feb. 25, 2013) ("Where the facts underlying the properly alleged discrimination claims are closely connected to the facts underlying the retaliation claims, courts have deemed the retaliation claims fairly within the scope of an EEOC investigation, notwithstanding the failure to clearly enumerate the basis for such a claim."). Consequently, the sexual harassment and retaliation claims and discrimination based on sexual orientation claim (Counts III, IV (first), IV (second), VI, IX) are exhausted.

### ii.     Hostile work environment claims

The hostile work environment claims were exhausted in the PHRC Charge dated March 29, 2023. Contrary to the City's suggestion that the particulars were limited to allegations of disability discrimination, Tohidi also alleged that "it was hard for him to work [at the City of Reading Police Department] due to the unfair treatment he was getting from his officers," that the "[s]tress was too much for him," and that he "was always threatened that he would be terminated." *See* PHRC Charge. Although these allegations may not be extensive, a reasonable investigation by the PHRC would have encompassed the hostile work environment claims, especially given that Tohidi specially claimed hostile work environment before the PHRC. *See id.* Moreover, the alleged facts supporting the hostile work environment claims[4] share a sufficient nexus with the particulars in the PHRC Charge.[5] *See Huff v. Quakertown Cmty. Sch. Dist.*, No. 16-2740, 2017 U.S. Dist. LEXIS 147140, at *10 (E.D. Pa. Sep. 12, 2017) (finding

---

4     Count XI (ADA hostile work environment) alleges, *inter alia*, that the hostile behavior included, but was not limited to, ". . . [u]nwarranted and excessive scrutiny of Plaintiff's work performance and productivity, not similarly imposed upon non-disabled employees." *See* Am. Compl. ¶ 123.

5     The PHRC Charge alleged, *inter alia*, that Tohidi "was held differently from his other coworkers when it comes to making mistakes" and "was punished differently from the others." *See* PHRC Charge.

sufficient overlap between the EEOC charge and the plaintiff's hostile work environment claim, which both mentioned that the defendant placed the plaintiff on a "performance improvement plan" and his accommodation request was denied because of that plan, for it to reasonably have grown out of the administrative charge). The hostile work environment claims Counts IV (first), VIII, X, XI) are therefore exhausted.

### B.     Tohidi has sufficiently pled disability discrimination.

The City asserts that Counts I and V (disability discrimination) should be dismissed for failure to state a claim because Tohidi fails to show pretext under the *McDonnell Douglas* framework. *See* Mot. 16-17, 19-20. The City further contends that Tohidi voluntarily resigned and has produced no evidence of the City's knowledge of Tohidi's alleged disability. *See id.* (relying on the PHRC's investigative findings). However, these arguments are not appropriate at the motion to dismiss stage. *See Connelly*, 809 F.3d at 791 (holding that at the motion to dismiss stage the plaintiff is not required to show pretext, establish a prima facie case, or to engage in the sort of burden-shifting rebuttal that McDonnell Douglas requires later in the proceedings, but need only "plead facts that, construed in her favor, state a claim of discrimination that is 'plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Real-Loomis v. The Bryn Mawr Tr. Co.*, No. 20-0441, 2021 U.S. Dist. LEXIS 90234, at *10 n.5 (E.D. Pa. May 12, 2021) (stating that "for purposes of the instant 12(b)(6) analysis, [Plaintiff] need not establish by a preponderance of evidence that Defendant's purported reason for terminating Plaintiff's employment was a pretext for discriminatory conduct"); *Diallo v. Commonwealth Support Servs.*, No. 18-1517, 2019 U.S. Dist. LEXIS 656, at *11 (E.D. Pa. Jan. 3, 2019) ("The issue of whether Plaintiff was constructively discharged is a 'fact-intensive question' that is inappropriate for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)."); *Sever v. Henderson*, 381 F. Supp. 2d

405, 419 (M.D. Pa. 2005) (Vanaskie, J.) (addressing the plaintiff's evidence showing that the defendant knew of his disability at the motion for summary judgment stage).

The Amended Complaint alleges that Tohidi has Tourette's syndrome, which causes him to make involuntary movements and/or sounds, and that because of his Tourette's, the City's agents perceived Tohidi as disabled and called him "retarded." *See* Am. Compl. ¶¶ 9-11, 17. The allegations are sufficient to plausibly infer that the City's agents perceived Tohidi as disabled. *See Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995) (concluding that "some symptoms are so obviously manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability"); *Bentler v. Nederostek*, No. 3:22-1107, 2023 U.S. Dist. LEXIS 86788, at *30 n.4 (M.D. Pa. May 17, 2023) (concluding that the plaintiff's allegation that the defendants knew he suffered from a mental health condition by virtue of his panicked 911 call was sufficient at the motion to dismiss stage to plausibly infer the defendants knew the plaintiff suffered from a mental disability so as to state an ADA claim). Tohidi's allegations that as a result of the name calling and discriminatory treatment he experienced, he was constructively discharged, *see* Am. Compl. ¶ 123, are also sufficient at the motion to dismiss stage to plead adverse action. *See Turner v. Pennsylvania*, No. 07-273 Erie, 2009 U.S. Dist. LEXIS 62621, at *13 (W.D. Pa. June 29, 2009) (concluding that the plaintiff's allegations that the defendants were aware of her diabetes, that her diabetes constitutes a disability under the ADA, and that she was demoted because of her disability, was sufficient to survive a motion to dismiss). These allegations combined with Tohidi's allegation that he was disabled but capable of performing his job duties, *see* Am. Compl. ¶¶ 10, 29, are sufficient to state a claim for disability discrimination. *See Purcell v. Pa. Dep't of Corr.*, No. 95-6720, 1998 U.S. Dist. LEXIS 105, at *23 (E.D. Pa. Jan. 9, 1998) (determining that whether the plaintiff's

Tourette's affected him seriously enough to qualify as a disability under Title II must be determined at trial).

      **C.**      **The disability retaliation claims are dismissed.**

The City argues that Counts II and VII (disability retaliation) should be dismissed for failure to state a claim because, consistent with the PHRC's investigative findings, the City had no knowledge of Tohidi's alleged disability. *See* Mot. 17-18, 20-21. The City also asserts that Tohidi has not established that he engaged in protected activity because no clear facts of the alleged complaints were presented, nor any details of the method or timing of his complaints. *See id.* 18, 21. The City further contends that Tohidi fails to present a causal connection between the alleged complaints and any increased discrimination or the conclusion of his employment. *See id.* 18, 20-21 (asserting that his termination was voluntary). The City suggests that the retaliation claim pertains to sexual harassment, not disability discrimination. *See id.* 20-21.

As mentioned in the previous section, the City's assertion that it had no knowledge of Tohidi's disability is contrary to the allegations in the Amended Complaint and not proper at the motion to dismiss stage. *See Diallo*, 2019 U.S. Dist. LEXIS 656, at *11 (holding that a challenge to whether the plaintiff was constructively discharged is not proper for a motion to dismiss). Although the sufficiency of the evidence showing constructive discharge is also not appropriate for a motion to dismiss, *see Sever*, 381 F. Supp. 2d at 419 (addressing the plaintiff's evidence showing that the defendant knew of his disability at the motion for summary judgment stage), Tohidi's allegation of constructive discharge resulting from the alleged harassment, discrimination, and/or hostile work environment is insufficient to plausibly infer adverse action to support a separate retaliation claim. *See Hall v. Guardsmark, LLC*, No. 11-115, 2012 U.S. Dist. LEXIS 61923, at *34-36 (W.D. Pa. May 3, 2012) (determining that the plaintiff had "pointed to no adverse employment action that she suffered as a result of her having complained

about incidents of sexual harassment in the workplace[, r]ather, the hostile work environment about which she had complained continued and led to her decision to leave, but this series of events does not permit her to maintain a separate claim for retaliation"). Tohidi's other allegations of adverse action also fail to support his retaliation claim and he fails to connect the same to his protected complaints.

The Amended Complaint alleges that "[f]rom the beginning of his employment, [Tohidi] experienced discrimination and harassment." *See* Am. Compl. ¶ 9. Although Tohidi alleges that he complained to his supervisor, he does not identify to whom he complained or even suggest when he complained. It could have been merely days or almost a year before his employment was terminated. "Adverse action that is not close in time with the protected activity may be insufficient to establish a causal connection." *See Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009) (concluding that the employee "did not establish causation because she was terminated several months after her alleged protected activity"). *See also Breeden*, 532 U.S. at 273-74 (citing a case that determined a three-month gap between the employer's knowledge of protected activity and an adverse employment action was insufficient evidence of causality to establish a prima facie case). Moreover, although Tohidi alleges that he "was only treated worse after he complained," such broad conclusions are insufficient to state a retaliation claim. *See Rodriguez v. Allegheny Cty.*, No. 2:14-cv-1690, 2015 U.S. Dist. LEXIS 43812, at *12 (W.D. Pa. Apr. 2, 2015) ("A bald, unsupported legal conclusion that Rodriguez was 'treated worse' after she asked for a transfer is not entitled to any weight and will be disregarded."). Tohidi does allege that his colleagues called him "retarded" more regularly after he complained, but "name-calling, even if true, does not suffice" to state a retaliation claim. *See Kidd v. Pennsylvania*, 37 F. App'x 588, 591 (3d Cir. 2002) (finding that name-calling does not constitute an adverse employment decision).

The City's Motion to Dismiss Counts II and VII is therefore granted. These counts are dismissed with prejudice.[6]

## V.      CONCLUSION

The sexual harassment, sexual orientation, retaliation, and hostile work environment claims were exhausted in the PHRC proceedings and the motion to dismiss on exhaustion grounds is denied. Also denied is the request to dismiss Counts I and V for disability discrimination because the Amended Complaint has sufficiently pled such claims. The allegations pertaining to disability retaliation, however, are insufficient as they fail to show constructive discharge resulting from the retaliation, as opposed to the alleged hostile work environment, and the alleged retaliatory name-calling is insufficient to support the claim. Further, Tohidi's allegations are woefully deficient of any details regarding the nature and timing of his complaints. Counts II and VII are dismissed with prejudice.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]    Considering that the deficiencies in the retaliation claims were specified in the City's Motion to Dismiss the original complaint and counsel failed to cure the same in the Amended Complaint, the Court finds that allowing further leave to amend would be futile and cause undue delay. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend "must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that leave to amend may be denied "based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment").